## SIMOYAN v. ROHAN, TREASURER, ET AL.

[No. 5,458. Filed November 14, 1905.]

1. STATUTES.—*"Transient Merchants."*—*Objects.*—The object of the statute (§§7231a-7231i Burns 1901, Acts 1901, p. 466) licensing "transient merchants" is for the benefit of local merchants in protecting them from unfair competition, to protect the people from such transient merchants' visitations, and to compel such transients to help support the expenses of the State, and municipalities. p. 500.

2. SAME.—*Transient Merchants.*—*Who Are.*—A merchant traveling from place to place engaged in the sale of rugs, who fraudulently, to evade the payment of license, arranges with a resident merchant to advertise his rugs in such manner as to lead the public to believe that the sale is by such resident merchant, when in fact he is receiving a commission only, is a "transient merchant" within the meaning of the statute (§§7231a-7231i Burns 1901, Acts 1901, p. 466). p. 501.

3. TAXATION.—*Transient Merchants.*—*Double Taxes.*—*Statutes.*—Where a transient merchant has paid the taxes upon his goods in one county, he can not be compelled to pay taxes again on the same stock, but where his stock is replenished, taxes are collectible on such new stock (§8441 Burns 1901, Acts 1897, p. 99). p. 501.

From Allen Circuit Court; *Edward O'Rourke,* Judge.

Suit by Artin Simoyan against John H. Rohan, as treasurer of Allen county, and another. From a decree for defendants, plaintiff appeals. *Affirmed.*

*Vesey & Vesey,* for appellant.

*Barrett & Morris,* for appellees.

ROBINSON, J.—Suit by appellant to enjoin appellees from levying upon a stock of goods for license fees and

taxes required by statute of transient merchants. Upon a special finding of facts, the court stated conclusions of law in appellees' favor. Errors are assigned as to each conclusion of law and in denying a new trial.

Appellant is a resident of the city and state of New York, and for several years has been engaged in selling oriental rugs in various cities and states, which sale usually continued in each city from one to two weeks, and for that purpose it has been his custom to travel from city to city selling the rugs, and in each city to occupy a storeroom for such purpose. The D. N. Foster Company is an Indiana corporation engaged in selling furniture, carpets, rugs and other goods, and for such purpose occupies, in the city of Ft. Wayne, the three floors of a building, the second floor of which is fifty by one hundred fifty feet, one end of which is occupied by the carpet department. About April 1, 1902, appellant was disposing of a stock of rugs in Muncie, Indiana, and after April 1 the county assessor of that county assessed appellant's stock for taxes at $1,000, the taxes on which amounted to $16.20 for state, county and school tax for the year 1902, and taxes for the city of Muncie for that year $10, which sums on May 5, 1902, appellant paid to the proper officers, and received from them receipts in full for such taxes. Appellant imports and receives consignments of rugs from time to time at various cities, and at Muncie he sold rugs to the amount of $4,000. After completing the sales at Muncie appellant removed the remaining stock to Lima, Ohio, at which place he received further consignments, and at Lima he sold rugs to the amount of $2,000. About May 8, 1902, he shipped his stock remaining unsold from Lima, with other rugs and goods added thereto, to Ft. Wayne, Indiana, the same being billed to appellant in his own name, where they arrived May 12, 1902. The value of the stock brought to Ft. Wayne was $7,500. After his arrival at Ft. Wayne, having made inquiry for a storeroom and as to the taxes and license fees,

he entered into a verbal agreement with the above-named furniture company by which it was agreed that the company should furnish appellant one of its rooms for the display and sale of rugs, and that they were to be displayed in the carpet room of such company's store, a portion of the company's stock being removed to another part of the room to make place for them. Appellant and his assistants displayed the rugs, explained their qualities and prices to prospective purchasers and had sole charge of such sales and the prices at which the rugs should be sold. The furniture company advertised the sale of the rugs and paid the auctioneer, who was secured by appellant, and for the help of its regular clerks and cashier in conducting the sale out of the percentage agreed to be paid as hereinafter found. It was further agreed between the company and appellant that the company should receive for the use of its storeroom and the services of its clerks and cashier and for its profits the sum of seven and one-half per cent on all goods sold at auction and ten per cent on all goods sold at private sale, and that the company should have the right to purchase, if it desired, all the stock remaining unsold at the close of the sale at a price agreed upon by the parties; but it was not expected or anticipated that the company would retain or purchase any portion of the rugs, and the company did not retain or purchase any of them. Pursuant to this agreement appellant delivered the stock of rugs in the company's storeroom, a portion of which stock consisted of the rugs from Lima, with a large amount of new rugs, and appellant made out a bill upon which there was an itemized list of the rugs, with numbers and prices; but the bill was an ordinary bill, charging the rugs at the prices thereon named to the furniture company, but was not signed by appellant or the furniture company, and contained no words of sale, transfer or consignment. The agreement between the appellant and the furniture company was not made in good faith, but was a scheme entered into to enable

appellant to avoid the payment of the lawful taxes as a transient merchant and the payment of license fees exacted by law of such merchants. The sale of the rugs was conducted in the carpet room of the furniture company, under the direction, control and management of appellant, upon five separate days, at which sales rugs were sold at the aggregate price of $3,500, after which appellant packed and removed the rugs unsold to another city for the purpose of making further sales. The company paid the auctioneer and all other expenses, including the auctioneer's license fee, out of seven and one-half per cent on the aggregate amount sold at auction and ten per cent on the amount sold at private sale. After the rugs were displayed for sale and before the sales began, appellee Baldwin, acting under the direction and by authority of appellee Rohan, treasurer, demanded of appellant that he pay the county treasurer a license fee of $20 per day for each day on which he displayed and sold rugs for the period of ten days, and at the close of the five days' sale again demanded a license fee of $20 per day for the five days, aggregating $100, which amount appellant refused to pay. After the rugs were displayed and offered for sale the county assessor demanded of appellant the true value in money of such stock, but appellant refused to return such value, under oath or otherwise, within twenty-four hours after such demand, and thereupon the assessor valued the stock at $7,500, and returned such valuation to the county auditor, who caused the same to be entered at once on the current tax duplicate in the hands of the treasurer, and computed the taxes thereon at the rate for state, county, township and municipal purposes in Ft. Wayne, which amounted to $163.50. Thereafter, before the bringing of this action, appellee Rohan, acting through his deputy, Baldwin, demanded of appellant $163.50 taxes, and the further payment of $100 as a license fee, or $20 per day for the five days; and, appellant having refused to pay such sums or any part

thereof, thereupon the treasurer levied on the stock, and was threatening to take the same into his possession under such levy for the payment of the taxes and license fees, and to sell the same for the satisfaction of such taxes and fees, both and all of which are unpaid. One thousand dollars in value of the goods assessed by the assessor are the same goods assessed by the assessor in Muncie, but appellant failed or refused to exhibit to the assessor the treasurer's receipts for such taxes so paid by him at Muncie; and when the deputy treasurer demanded of him as to whether the taxes had been paid in any other county in the State, appellant informed him that they had not, and wholly failed and neglected to exhibit to him either of such receipts. Appellant had never offered to pay or tendered such taxes so assessed, or such license fee, or any part thereof.

The court stated as conclusions of law (1) that appellant is and was at the time the stock was assessed a transient merchant; (2) that the stock was liable for assessment at the rate for state, county, township and muncipal purposes in Ft. Wayne, less the amount in value so assessed and paid by him at Muncie; (3) that appellant is liable to pay a license fee as a transient merchant at the rate of $20 per day for each day he displayed and offered his stock for sale in Ft. Wayne; (4) that there is due and unpaid from appellant $100 as a license fee payable to the county treasurer, which was duly levied thereon and is a lien on the stock of rugs; (5) that there is due and unpaid, as taxes for state, county, township and municipal purposes, $141, which is a lien upon the stock of rugs, and was duly levied thereon by the treasurer; (6) that appellant is not entitled to an injunction enjoining the sale of the stock of rugs for the payment of such license fee and taxes; (7) that appellees are entitled to recover from appellant their costs. The judgment was that appellant take nothing by his action, and that appellee Rohan recover costs.

Section six of the act in force May 15, 1901 (Acts 1901, p. 466, §§7231a-7231i Burns 1901), provides: "The words 'transient merchant,' when used in this act

1. shall include all persons, individuals, copartners and corporations, both of principals and agents, who engage in, do or transact any temporary and transient business in this State, either in one locality or in traveling from place to place in this State, selling goods, wares and merchandise, and who, for the purpose of carrying on such business, hire, lease or occupy any building or structure for the exhibition and sale of such goods, wares and merchandise." The act makes it unlawful for a transient merchant to do business without having first obtained a license, and, among other things, provides for the issuing of a license, and a license fee.

We are not here considering a city or town ordinance passed in pursuance of legislative authority given to municipal corporations to license the business of transient merchants, but a legislative act which itself fixes the amount of the license fee and the restrictions upon the business. One purpose of the legislature, no doubt, in enacting the statute, was for the benefit of local merchants on whom the municipality is partly dependent for its support, and to protect them from an unfair competition; and another probably was to protect the houses and places of business of the citizens of the municipality from the practices of itinerant traders of unknown repute. "The object of the statute," said the court in *Commonwealth* v. *Crowell* (1892), 156 Mass 215, 30 N. E. 1015, "would seem to be to protect the public from the imposition liable to be practiced upon it by itinerant venders who are not hawkers or peddlers, because hiring, leasing, or occupying a building for their business, but who sell temporarily or transiently in one place, or in traveling from place to place, goods, wares, or merchandise, and who might naturally be

supposed to be free, to some extent at least, from the restraints and influences inducing fair and honest dealing which apply to persons established permanently in trade in a given locality. The statute applies to residents and non-residents, and is not, as we construe it, designed or calculated to prevent fair and free competition, but only to protect the public against fraud, and to place the traffic under what the legislature, having regard to the character of the business, deems wholesome restraints."

But we are not so much concerned on this appeal with the purpose of the legislature in enacting the above statute as we are with the question, do the facts found by the court bring appellant within the above statutory definition of a transient merchant. We think they do. There was evidence authorizing the trial court to conclude that there was no sale of the goods by appellant to the furniture company, and that the agreement and arrangement between them was not *bona fide,* but was entered into to enable appellant to avoid the payment of license fees and taxes. Appellant never parted with his title to the rugs, and no contract was made that would in any sense bind the furniture company to take the goods.

2.

It is also argued that the goods were improperly assessed for taxes. If the stock of goods at Ft. Wayne was substantially the same stock appellant had at Muncie, the receipts of the treasurer of Delaware county and of the city of Muncie for the taxes paid there for the current year would excuse him from the payment of further taxes for that year. But the evidence and findings do not show that the stock was substantially the same. He was not assessed in Ft. Wayne with any property on which he had paid taxes in Delaware county. The statute (§8441 Burns 1901, Acts 1897, p. 99) does not provide that the assessment shall be made on the value of the stock owned by the transient person on a fixed date, but shall be

3.

made on the value of the stock at the time he locates in the place for the purpose of selling or disposing of the goods, and offers to sell or otherwise dispose of them. The statute should not be given a construction that would enable a transient person to escape an assessment on a stock worth $10,000 by producing a treasurer's receipt for taxes previously paid in another county on the stock worth at that time but $100. The question is: What was the true value in money of the stock at the time the statute makes the stock liable to assessment? This value is to be determined at the time and place the owner temporarily locates and offers the stock for sale. It is to be presumed that the assessing officers will assess the property at its true value in money; and, if they do, the owner could not be required to pay taxes on the same property more than once in the same year.

It is true that local merchants are not assessed on additions made to their stocks after they have been assessed for the current year; and it is also true that there are some inconveniences and inequalities resulting from fixing the liability of persons and property for taxation by an assessment as of a certain day. But it is, perhaps, the best regulation the law can establish. The most practicable system has been found to be to notice changes in ownership and increased values after the period of assessment at the time for a new assessment. But local merchants are required to list stock on hand on the date fixed and "all amounts purchased with a view to possession or profit." However, this may be no more than an illustration of the inequalities of taxation. But with the power of the legislature to impose a tax as it has imposed it by §8441, *supra,* we have nothing to do on this appeal. Appellant placed himself within a class of persons the property of whom is assessed for taxes in a particular way. The findings show that the officers were not attempting to collect taxes on any property

on which the taxes for the current year had been paid. The officers assessed the stock, as the statute requires, at its value at the time it was offered for sale, and the tax receipts do not show that all taxes for the current year had "been paid on such stock of goods."

Judgment affirmed.